**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　　Plaintiff-Appellee,

v.

JASON MCKINNEY,

　　　　　Defendant-Appellant.

Nos. 08-3137 & 09-3069
(D.C. No. 2:06-CR-20078-JWL-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Jason McKinney pleaded guilty to one count of possession with intent to

distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841

(b)(1)(A)(iii) and one count of use of a firearm in relation to a drug trafficking

crime in violation of 18 U.S.C. § 924(c). On appeal he raises two points of error.

In the first he argues that the district court erred by denying his motion to

---

[*]　　　　After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

suppress evidence obtained in searching a residence.[1]  In the second he argues

that the court abused its discretion in denying his motion to withdraw his guilty

plea.

Our jurisdiction is under 28 U.S.C. § 1291, and we AFFIRM.

I.

The general facts necessary to this appeal are brief.  Mr. McKinney was

arrested after a woman contacted the Leavenworth, Kansas, police department and

told them that a man known to her as "Smoke" had pointed a gun at her during an

attempted drug purchase.  When the police interviewed the woman she told them

that "Smoke" had been accompanied by a man with dreadlocks and that the pair

had left the area in a car.  She described the car to police.  After a brief search,

the police located a car matching the woman's description parked in front of a

duplex.

Mr. Cecil Newsom answered when the police knocked on the duplex's

door.  Mr. Newsom initially refused to let the police search the duplex, telling

them that the only other person in the house was a sleeping woman.  But after

about ten minutes he agreed to allow the officers to search the house for "Smoke"

and they entered and yelled repeatedly for everyone in the house to come out with

their hands raised.  Eventually "Smoke," who turned out to be Mr. McKinney,

---

[1]	In pleading guilty, Mr. McKinney preserved his right to appeal the
dismissal of his motion to suppress evidence.

emerged and was apprehended. The police then searched the remainder of the duplex for the man alleged to be with Mr. McKinney. They found three individuals hiding in the duplex: the woman Mr. Newsom had informed them about, and two men, one with dreadlocks. The police left the duplex, allowing Mr. Newsom to go back to sleep, but eventually returned with a search warrant, obtained in part due to statements made to them by the woman from the duplex. She told the police that she had seen Mr. McKinney in the duplex with a mix of powdered and crack cocaine and a gun. Upon searching the duplex, the police found powdered and crack cocaine in the back of a toilet–the woman told the police she had heard what she thought was the lid on the back of the toilet being lifted–and a pistol.

Mr. McKinney sought to have the evidence regarding the drugs and weapon suppressed as fruit of the poisonous tree, alleging the police had no right to continue their initial search after they located Mr. McKinney. His motion was denied and he eventually pleaded guilty. He later moved to withdraw his plea, arguing, among other things, that it was not knowingly made due to the fact that he was unaware that the prosecutor's office suspected that he had made threats against the prosecutor in the case. After his withdrawal motion was denied, he was sentenced to 320 months' imprisonment on the first count and sixty months' imprisonment on the second, to run consecutively, as well as ten years' supervised release. He now appeals.

II.

Mr. McKinney first argues that the district court erred in denying his motion to suppress because Mr. Newsom's consent to the search of the duplex was not freely and voluntarily given. "[T]he Fourth Amendment requires that consent be voluntary and not be coerced, by explicit or implicit means, by implied threat or covert force. Voluntariness is a factual finding that is determined under the totality of the circumstances. Thus, we review the district court's determination of voluntariness for clear error." *United States v. Thompson*, 524 F.3d 1126, 1133 (10th Cir. 2008) (quotations and citations omitted). Mr. McKinney argues that the court "failed to consider the effect of the totality of the circumstances on the validity of Mr. Newsom's eventual consent" and that when the totality of the circumstances are considered "it is clear that Mr. Newsom had an objective reason to believe that he was not free to terminate the conversation and return to his house without granting consent for the search." Aplt. Opening Br. at 19.

When law enforcement officers ask to search a home, there will generally be factors surrounding the request that have coercive effect. For example, in this case there were a number of officers' present; the officers warned Mr. Newsom that harboring a fugitive was against the law; Mr. Newsom was on medication; and Mr. Newsom was arguably physically uncomfortable because it was cold outside and, as he had evidently been sleeping, he was clad in boxer shorts.

Generally, the court is faced with a situation where a person has initially consented to a police search and later claims that the consent was actually coerced. The court must then consider the situation, and the coercive factors present, when determining the validity of the consent. But here, Mr. Newsom testified at the suppression hearing and, as pointed out by the district court, never claimed that his consent was coerced. Instead, he testified that he consented to the search because he had nothing to hide. In light of Mr. Newsom's own testimony, it is impossible to conclude that the district court committed clear error in finding that his consent was not coerced. *See United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009) (holding that we must have a "definite and firm conviction that a mistake has been committed" before reversing a factual finding for clear error (internal quotation omitted)).

Mr. McKinney also briefly argues that, even if Mr. Newsom's consent was not coerced, the officers' search exceeded the scope of that consent. He contends that Mr. Newsom agreed only that the officers could search the house for Mr. McKinney. Thus, once they had located Mr. McKinney, they had to leave. The district court held that the officers were justified in continuing to search the house for other occupants after apprehending Mr. McKinney because they had a right to conduct a protective sweep of Mr. Newsom's residence.

> "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). For

a *Buie* search to be upheld under the Fourth Amendment, officers must have "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing, that the area swept harbored an individual posing a danger to the officer or others." *Id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983))

*United States v. Freeman*, 479 F.3d 743, 750 (10th Cir. 2007) (alterations omitted). The district court noted that the officers in this case had been told that Mr. McKinney was armed but he had no weapon when taken into custody; they knew that there was at least a female occupant that had not come out when ordered to do so; and they knew that Mr. McKinney supposedly had a dreadlocked companion who had not been located. The court found that the officers were therefore justified in doing a quick protective sweep of the house, noting the fact that the entire entry, search, and arrest of the four individuals took approximately six minutes.

We see no plain error in this ruling, and Mr. McKinney's cursory assertion that "it is [his] position that a protective sweep was not justified in this circumstance," Aplt. Opening Br. at 21, is insufficient to require further consideration. *See United States v. Abdenbi*, 361 F.3d 1282, 1290 (10th Cir. 2004) ("This court will not craft a party's arguments for him." (quotation omitted)).[2]

---

[2] It is possible that Mr. McKinney is also trying to raise a third point of error and argue that probable cause did not exist to support the search warrant that was

(continued...)

III.

In his second point, Mr. McKinney argues that the district court erred in denying his motion to withdraw his guilty plea. He argues that he should have been allowed to withdraw his plea because it was at least partially based on the government's agreement that it would interview him and provide the opportunity to cooperate, and then consider filing a motion seeking a downward departure in regard to Mr. McKinney's sentencing, depending on the usefulness of any information provided.

Mr. McKinney argues that at the time he pled guilty, the government did not inform him that it believed he had made threats of violence against a prosecutor in the case. He takes issue with the district court's determination that he was not entitled to withdraw his guilty plea under Fed. R. Crim. P. 11(d), arguing that the government's failure to inform him about its investigation into

---

[2](...continued)
subsequently issued to search Mr. Newsom's house. In a short paragraph Mr. McKinney's counsel informs the court that he made such argument to the district court and that the supporting affidavit "contained information pertaining to earlier drug dealings at the house in question and background information on the defendant and others who had been observed at the house at an earlier point in time" and referenced "statements made by [the woman in the duplex] but failed to mention that she had outstanding arrest warrants and that she was arrested hiding in the house to be searched." Aplt. Opening Br. at 21. To the extent that this is an attempt to raise a probable cause argument, it is an insufficient one. *See Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 n.6 (10th Cir. 2008) (holding that a conclusory claim of error unaccompanied by a "reasoned argument as to the grounds for the appeal" is insufficient).

threats against the prosecutor rendered his plea unknowing, despite the fact that he was aware the government was investigating threats to witnesses.

> Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." To determine whether a defendant has met this burden, seven factors are considered: (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources. We review the denial of a Rule 11(d)(2)(B) motion for abuse of discretion. Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision unless the defendant can show that the court acted unjustly or unfairly.

*United States v. Garcia*, 577 F.3d 1271, 1273-74 (10th Cir. 2009) (quotations and citations omitted). Mr. McKinney addressed only the fifth and sixth of these factors in his motion to the district court, and the court held that "only the lack of a substantial delay in filing for withdrawal possibly weighs in defendant's favor." R., Vol. 1, Doc. 133 at 18. The court found that the fifth factor failed to weigh in Mr. McKinney's favor in that he failed to present any evidence at hearing to support his claim of plea counsel coercion. And after considering the fact that McKinney knew he was being investigated for making threats to witnesses, that he understood that, in any case, that the government retained the ultimate discretion regarding the downward departure recommendation, and that he testified under oath that his plea was voluntary, the court held that Mr. McKinney had failed to establish that the plea was not knowing and voluntary.

On appeal, Mr. McKinney argues that making threats against prosecutors is an entirely different matter than making threats against witnesses, that his plea could not be considered "knowing" when he did not have complete information about the government's investigation at the time of his plea, and that, considering the unknowing nature of his plea, the district court abused its discretion in not allowing him to withdraw it. We disagree.

It is true that Mr. McKinney probably wishes he had more information about the scope of the government's investigation. But he has presented no authority to convince us that he was entitled in plea negotiations to everything the prosecutors might take into consideration when determining whether to eventually request a downward departure under U.S.S.G. § 5k1.1. Here, the prosecutors had promised only to consider any information presented by Mr. McKinney and then consider whether that information justified a downward departure request and Mr. McKinney knew at the time of the plea that he was already being investigated for threatening witnesses. Considering the seven factors that the district court was required to consider in deciding whether Mr. McKinney had a fair and just reason for asking to withdraw his plea, the fact that Mr. McKinney's motion only addressed the voluntary and knowing nature of his plea and the defendant's assistance of counsel, and the fact that Mr. McKinney failed to offer evidence at the motion hearing to support his ineffective assistance claim, we cannot say that the district court abused its discretion in denying Mr. McKinney's motion.

IV.

The judgment of the district court is AFFIRMED.  The government's motion to dismiss Appeal No. 08-3137 as premature when filed is DENIED as moot.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge