**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

**June 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID WILLIAM WILCOX,

    Defendant - Appellant.

No. 20-7047
(D.C. No. 6:19-CR-00093-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**\*

Before **HARTZ, HOLMES**, and **EID**, Circuit Judges.

Defendant-Appellant David William Wilcox appeals from the district

court's denial of his motion to withdraw his guilty plea. Mr. Wilcox argues that

the district court abused its discretion when it found that his assertion of

innocence was not credible based on Mr. Wilcox's previous admission that he

knew he was required to register as a sex offender and that he did not do so when

he arrived in Oklahoma. Specifically, Mr. Wilcox argues that the district court

erred because he never admitted to knowing that he was not "properly registered"

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

at the time of the offense.  Exercising jurisdiction under 28 U.S.C. § 1291, and for the reasons that follow, we **affirm**.

## I

In 2014, Mr. Wilcox was convicted of a sex offense in North Dakota state court.  This required him to register as a sex offender under both state and federal law.  After his release from prison for the sex crime, Mr. Wilcox remained in North Dakota.  While there, he complied with the sex-offender registration requirements.  This included acknowledging that he was required to register with local law enforcement within three days of entering another city, county, or state where he intended to reside.

In September 2018, Mr. Wilcox told North Dakota law enforcement that he intended to move to Muskogee, Oklahoma, with "an intended activation date of September 21, 2018."  R., Vol. III, ¶ 8 at 2 (Presentence Investigation Report, dated May 19, 2020) [hereinafter "PSR"].  Mr. Wilcox last updated his registration in North Dakota on September 19, 2018.  In the same registration form, he again acknowledged that he was required to register with law enforcement within three days of entering a new jurisdiction or every three days if he became homeless.

Mr. Wilcox never registered as a sex offender in Oklahoma.  On September 16, 2019, he was arrested.  He told the police that "he had not made contact with any law enforcement after arriving in Oklahoma and was under the impression

2

that once he left North Dakota he did not have to register as a sex offender." *Id.* ¶ 10 at 2.

Mr. Wilcox was charged with traveling "in interstate commerce and knowingly fail[ing] to register and update his registration" from October 21, 2018, to September 16, 2019, as required by the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a).  R., Vol. I, at 9 (Indictment, filed Dec. 11, 2019).  A few months after being charged, Mr. Wilcox notified the court that he intended to plead guilty.

After conducting the advisements required by Federal Rule of Criminal Procedure 11 at the change of plea hearing, the court[1] asked Mr. Wilcox whether his attorney had discussed with him the "essential elements of the charge" and whether he understood them.  R., Vol. II, at 21 (Change of Plea Hr'g Tr., dated Mar. 4, 2020).  Mr. Wilcox answered "yes" to both inquiries.  *Id.*  The court then told Mr. Wilcox to explain "what [he] did or how did [he] commit the acts in connection with the charge made against [him]." *Id.* at 21–22.  Mr. Wilcox explained:

> I had been convicted of a felony offense in the state of North Dakota, which required me to register as a sex offender. Between October the 18th and September 16th of 2019, I was required to register as a sex offender.  I moved to the state of Oklahoma where I am required to register as a sex offender.

---

[1]    With consent, a magistrate judge presided over Mr. Wilcox's change of plea hearing.

> While in Oklahoma, I failed to update my registration information with local law enforcement.

*Id.* at 22.  The court asked "what dates were [you] involved in that?"  *Id.*  Mr. Wilcox responded, "October 21st of 2018 and September the 16th of 2019"—i.e., the date range for the offense charged in the indictment.  *Id.*  The court then asked if Mr. Wilcox's statement constituted all of the elements of the underlying offense, and the prosecutor answered, "yes."  *Id.*  The court accepted Mr. Wilcox's guilty plea.

About seven weeks after entering his guilty plea, Mr. Wilcox told the court in a pro se letter that he found the registration requirements "confusing" and "had to rely on the officials" at the police department in North Dakota to explain them to him.  R., Vol. I, at 26 (Second Pro Se Letter, filed Apr. 24, 2020).   In the same letter, Mr. Wilcox said an officer in North Dakota told him that "everything was tak[en] care of" in Oklahoma, and once he got to Oklahoma, he would have to update his registration once a year.  *Id*. at 26–27.  Mr. Wilcox stated that—based on that advice about the purported one-year registration requirement—at the time of his arrest, he "still thought [that] [he] had a month to update [his] registr[ation]" because he arrived in Oklahoma "on October 28, 2018."  *Id.* at 27.  In this regard, Mr. Wilcox proclaimed that he "truly did not believe [he] was breaking any laws."  *Id.*

4

Three months later, Mr. Wilcox's attorney withdrew, and the court appointed new counsel. Shortly after being appointed, the new counsel filed a motion to withdraw Mr. Wilcox's guilty plea. The motion focused on Mr. Wilcox's assertion of innocence. Specifically, Mr. Wilcox argued that "he thought he was properly registered in Oklahoma," and, therefore, "Defendant is making a good faith assertion of his innocence." *Id.* at 40 (Def.'s Mot. to Withdraw[] Plea of Guilty and Br. in Supp., filed July 24, 2020).

At the sentencing hearing, the court considered Mr. Wilcox's motion to withdraw his guilty plea. After hearing from both parties, the court denied the motion to withdraw the guilty plea. The court noted that "at the plea hearing, the defendant said under oath that he knew about the registration requirement and while in Oklahoma [Mr. Wilcox] failed to update [his] registration information with local law enforcement, which belies his statement now that he thought he was registered." R., Vol. II, at 31 (Mot. and Sentencing Hr'g Tr., dated Aug. 5, 2020).

After denying the motion to withdraw the guilty plea, the court asked the parties whether they had any objections to the PSR. There being none, the court accepted it as the factual basis for the court's sentence. The court sentenced Mr. Wilcox to a term of 33 months' imprisonment. Mr. Wilcox appeals.

5

## II

"Defendants do not have an absolute right to withdraw a guilty plea." *United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000). After a court has accepted a guilty plea, but before it has imposed a sentence, a defendant may withdraw his plea by showing "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). It is the defendant's burden to establish "a fair and just reason for requesting the withdrawal." *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007) (quoting FED. R. CRIM. P. 11(d)(2)(B))). This is because "[w]ere withdrawal automatic in every case . . . , the guilty plea would become a mere gesture, a temporary and meaningless formality . . . . In fact, however, a guilty plea is no such trifle, but a 'grave and solemn act,' which is 'accepted only with care and discernment.'" *United States v. Hyde*, 520 U.S. 670, 677 (1997) (quoting FED. R. CRIM. P. 32, advisory committee note to 1983 amendment). Therefore, a defendant "is not entitled to withdraw his plea simply because he possesses a non-frivolous defense theory; rather, on appeal, he must show that the district court 'acted unjustly or unfairly.'" *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009) (quoting *Hamilton*, 510 F.3d at 1214).

"We have identified some considerations that can help illuminate whether a particular request qualifies . . . ." *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011). Specifically, to determine whether a defendant has met his

burden to show a fair and just reason for withdrawing his guilty plea, we consider the following seven factors: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).  But "we have also recognized that the Rule's standard—inviting and even commanding a general inquiry into fairness and justice—is not so easily captured and compartmentalized."  *Soto*, 660 F.3d at 1267.  Therefore, "we have explained, it always and ultimately lies 'within the sound discretion of the district court to determine' on a case by case basis when the standard is and isn't met."  *Id.* (quoting *Gordon*, 4 F.3d at 1572).  Consequently, even though a motion to withdraw a guilty plea should be "freely allowed," we will only reverse a district court when the defendant has shown the court acted "unjustly or unfairly." *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016) (quoting *Garcia*, 577 F.3d at 1274).

In accord with these legal principles, we review a district court's denial of a motion to withdraw a guilty plea under "our 'deferential' abuse-of-discretion standard."[2]  *United States v. Dominguez*, 998 F.3d 1094, 1103 (10th Cir. 2021)

---

[2]    We have recognized that two *Gordon* factors—"whether the plea was knowing and voluntary and, if reviewable on direct appeal, whether counsel

(continued...)

7

(quoting *United States v. Byrum*, 567 F.3d 1255, 1259 (10th Cir. 2009)); *see also*

*Soto*, 660 F.3d at 1267 ("[W]e retain our traditional function to review the district

court's decision for an abuse of discretion and to delineate appropriate rules

regarding when 'the defendant can [and cannot] show that the court acted unjustly

or unfairly.'" (second alteration in original) (quoting *Gordon*, 4 F.3d at

1572–73)).

We have "traditionally understood [the abuse of discretion standard] to

mean that we will reverse a determination only if the court 'exceeded the bounds

of permissible choice,' given the facts and the applicable law in the case at hand."

*United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United

States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).  In this regard,

frequently, "there will be a range of possible outcomes [that] the facts and law at

issue can fairly support; rather than pick and choose among them ourselves, we

will defer to the district court's judgment so long as it falls within the realm of

these rationally available choices." *Id.*  Nevertheless, "we will not hesitate to

---

[2](...continued)
provided effective assistance"—are reviewed de novo. *Marceleno*, 819 F.3d at
1272.  On the other hand, we "have been careful to avoid singling out individual
*Gordon* factors for more deferential review." *Id.* (explaining that although "[t]he
district court styled its conclusions regarding [the defendant's] assertion of
innocence as 'findings of fact'. . . which we typically review only for clear error .
. . [t]o review the district court's overall conclusion on the credibility of [the
defendant's] assertion of innocence *only* for clear error would deviate from our
previous treatment of motions to withdraw a guilty plea" (emphasis added)
(citations omitted)).

find abuse where a decision is either 'based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment.'" *Id.* at 1054 (quoting *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995)).

### III

Mr. Wilcox argues that the district court erred in denying his motion to withdraw his guilty plea because he thought he was "properly registered" at the time of the offense, and therefore, was innocent. We will first summarize the legal standard for assessing the merits of an assertion of innocence claim—the only element that Mr. Wilcox contests. Then, we will explain why Mr. Wilcox cannot show the district court abused its discretion in denying his motion.

### A

To prevail on an assertion of innocence claim, a defendant must make an argument that is both credible and supportive of a legally cognizable defense. *Marceleno*, 819 F.3d at 1273; *see Hamilton*, 510 F.3d at 1214 ("[T]he mere assertion of a legal defense is insufficient; the defendant must present a *credible* claim of legal innocence."). "A district court need not accept a defendant's version of the facts as true for purposes of evaluating whether a defendant's assertion of innocence is credible." *Marceleno*, 819 F.3d at 1274–75. We have explained that "[t]o hold otherwise would undermine Rule 11 by removing the discretion granted to district courts on motions to withdraw a guilty plea." *Id.* at 1275. Instead, we have explained that a credible claim is one that "'has the

9

quality or power of inspiring belief,' and 'tends to either defeat the elements in the government's prima facie case or make out a successful affirmative defense.'" *Id.* (quoting *United States v. Thompson-Riviere*, 561 F.3d 345, 353 (4th Cir. 2009)).  In keeping with our overall standard of review for a denial of a motion to withdraw a guilty plea, we review the court's determination as to the assertion-of-innocence factor for an abuse of discretion.  *See id.* at 1272 (noting we have declined to adopt a clear error standard to review a district court's overall conclusion on the credibility of a defendant's assertion of innocence because doing so "would deviate from our previous treatment" of "avoid[ing] singling out individual *Gordon* factors for more deferential review" when considering motions to withdraw a guilty plea).

**B**

Reviewing the district court's denial of Mr. Wilcox's motion to withdraw his guilty plea for an abuse of discretion, we conclude that the district court did not act "unjustly or unfairly" or otherwise abuse its discretion when it concluded that Mr. Wilcox's assertion of innocence was not credible in light of his previous statements at the change of plea hearing.  The district court's finding that Mr. Wilcox's assertion of innocence was not credible reflects—at the very least—a plausible view of the import of his statements at that hearing.  As the district court saw it, those statements belied (i.e., were inconsistent with) Mr. Wilcox's

10

assertion of innocence.  In sum, the court did not abuse its discretion by denying

Mr. Wilcox's motion to withdraw his guilty plea.

To decide this issue, we must determine what Mr. Wilcox is and is not

arguing.  As to the latter, it is notable that Mr. Wilcox does not argue that he is

innocent because he does not satisfy the legal mens rea requirement for

knowingly failing to register as a sex offender; indeed, he explicitly asks us not to

consider this mens-rea question.  *See* Aplt.'s Opening Br. at 7 n.2.  Specifically,

Mr. Wilcox notes that we have not defined what the "knowingly" element means

in the context of § 2250(a).  *Id.* (citing *United States v. Forster*, 549 F. App'x

757, 762 n.2 (10th Cir. 2013)).  He points out that "[t]he circuits to have

addressed the issue have held that the 'knowingly' element of section 2250(a)

requires only that a defendant have knowledge that he was legally required to

register as a sex offender."  *Id.*; *see, e.g*, *United States v. Vasquez*, 611 F.3d 325,

328 (7th Cir. 2010) ("Today we join the Fourth, Fifth, Eighth, and Eleventh

Circuits . . . and hold that SORNA merely requires that a defendant have

knowledge that he was required by law to register as a sex offender."); *id.* at 329

("To that end, a defendant can be convicted under SORNA if the government can

prove that he knew he was required to register as a sex offender.").  Mr. Wilcox

says that we need "not [decide the mens rea question] here."  Aplt.'s Opening Br.

at 7 n.2.  He explains that this would be unnecessary because he "claims not that

11

he was unaware of SORNA's requirements in particular but that he generally believed he was properly registered." *Id.*

Mr. Wilcox frames his challenge as a factual one. He argues that the district court found his assertion of innocence not to be credible "based on a misreading of the record." *Id.* at 8. In his motion to withdraw his guilty plea, Mr. Wilcox argued that he was actually innocent because he did not knowingly fail to register as a sex offender and instead "thought that he was properly registered in Oklahoma." R., Vol. I, at 39. The district court did not find this credible in light of his testimony at the change of plea hearing where he admitted that he knew that he was required to register as a sex offender and that he did not do so upon arriving in Oklahoma. So here, Mr. Wilcox argues that the district court abused its discretion because the court based its conclusion on a clearly erroneous reading of the record—specifically, that nowhere in the record did Mr. Wilcox admit that he knew at the time of the offense that he was not "properly registered" in Oklahoma. Aplt.'s Opening Br. at 6.

We disagree with Mr. Wilcox's contention that the district court abused its discretion by finding that his assertion of innocence was not credible because it misread the record. As the district court plausibly (indeed, reasonably) explained, "in his statement of the factual basis at the plea hearing, the defendant said under oath that he knew about the registration requirement and while in Oklahoma [he] failed to update [his] registration information with local law enforcement, which

belies his statement now that he thought he was registered." R., Vol. II, at 31; *see id.* at 22 ("I had been convicted of a felony offense . . . which required me to register as a sex offender. Between October the 18th [of 2018] and September 16th of 2019, I was required to register as a sex offender. . . . While in Oklahoma, I failed to update my registration information with local law enforcement."); *id.* (replying to "what dates were [you] involved in that," Mr. Wilcox answered, "October 21st of 2018 and September the 16th of 2019").

In other words, the court plausibly found that, based on his statements, Mr. Wilcox had effectively admitted at the change of plea hearing (1) that he knew about the registration requirement and (2) while in Oklahoma, he had failed to register. The court concluded that Mr. Wilcox's subsequent assertion of innocence was belied by these statements; that is, his assertion was not credible. This conclusion is grounded in a permissible reading of the record—even if it is not the only plausible reading of the record—and, therefore, the court did not clearly err. *See, e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *accord United States v. Ellis*, 23 F.4th 1228, 1241 (10th Cir. 2022). And the court did not otherwise act "unjustly or unfairly" in rejecting Mr. Wilcox's argument for relief. *See Garcia*, 577 F.3d at 1274 (quoting *Hamilton*, 510 F.3d at 1214).

Yet Mr. Wilcox contends that there was no contradiction between his statements at the change of plea hearing and his subsequent assertion of

innocence. As Mr. Wilcox reasons, that is because he never admitted that he knew that, at the time of the charged offense, he was not "properly registered" in Oklahoma. And it is undisputed that the district court did not purport to make any finding—much less an adverse one—concerning whether Mr. Wilcox knew that he was "properly registered" at the time of the offense.

However, Mr. Wilcox fails to demonstrate the relevancy of this "properly registered" contention to the factual challenge that he has presented here: that is, his challenge to the district court's determination—based on its reading of his statements at the change of plea hearing—that his assertion of innocence was not credible. More specifically, to understand why Mr. Wilcox's argument that he did not know he was not "properly registered" while in Oklahoma does not save his assertion of innocence claim, it is important first to understand what Mr. Wilcox means by "properly registered." To Mr. Wilcox, "properly registered" means that, at the time of his charged offense, he did not know that by not registering in Oklahoma he was not in compliance with his SORNA registration requirement.

In effect, Mr. Wilcox argues that he had to know at the time of the offense that he was not in a lawful registration status (i.e., "properly registered"). *See, e.g.*, Aplt.'s Opening Br. at 1 ("[H]e was unaware at the time of the alleged offense that he was not properly registered as a sex offender. . . . Mr. Wilcox never admitted at the change of plea hearing to knowing he was not properly

14

registered at the time the offense allegedly occurred."); *id.* at 3 ("But he did not admit that he had known he was not properly registered at the time of the alleged offense."); *id.* at 4–5 ("Mr. Wilcox 'thought he was properly registered in Oklahoma'. . . . Mr. Wilcox averred that he had repeatedly explained to his previous lawyer that he thought he 'had properly registered.'"); *see also* Aplt.'s Reply Br. at 1 ("While his admission demonstrates that he knew he had failed to properly register at the time he pled guilty, it does not show that he knew he wasn't properly registered at the time of the alleged offense." (emphases omitted)); *id.* ("[B]y the time he pleaded guilty, Mr. Wilcox had been appointed an attorney who undoubtedly reviewed the discovery with him and explained that, in fact, he had not been properly registered, regardless of what he had thought at the time."); *id.* at 2 ("Because Mr. Wilcox's admissions at the change of plea hearing would not compel a finding that he knew he wasn't properly registered at the time of the alleged offense, it certainly would not exceed the bounds of permissible choice for the court to decline to make that finding.").

This argument is consistent with Mr. Wilcox's prior claim in his pro se letter to the district court that "[he] truly did not believe [he] was breaking any laws." R., Vol. I, at 27. But it is worth underscoring that Mr. Wilcox is *not* arguing that he did not have knowledge of the registration requirement or that he believed he had actually registered in Oklahoma. *See* 18 U.S.C. § 2250(a) ("Whoever . . . is required to register under [SORNA]. . . and (3) knowingly fails

15

to register or update a registration as required by [SORNA] . . . shall be fined under this title or imprisoned . . . .").

As we see it, then, Mr. Wilcox's argument that the district court misread the record in perceiving a contradiction between his statements at the change of plea hearing and his subsequent assertion of innocence is tacitly predicated on a particular theory regarding the nature of the mens-rea requirement of his registration offense. Under this theory, not only does a defendant need to know that he was legally required to register as a sex offender, but also that, when the crime was committed, he was not "properly" registered—that is, not lawfully registered.

However, even under Mr. Wilcox's own reading of the caselaw, our sister circuits have repeatedly adopted a different mens-rea theory, *see Vasquez*, 611 F.3d at 328, and we have not opined on the specific subject, *see* Aplt.'s Opening Br. at 7 n.2. And more problematic still for Mr. Wilcox, he has expressly disclaimed any intention of challenging the district court's view of the mens-rea standard and, indeed, has told us there is no need for us to reach the issue of the proper mens-rea standard. *See* Aplt.'s Opening Br. at 7 n.2. That is, Mr. Wilcox has not argued on appeal that the district court committed legal error by not adopting a particular mens-rea theory—including the one he tacitly endorses

16

here—and he expressly disclaims any interest in us reaching this conclusion.[3]

---

[3]    Though Mr. Wilcox explicitly tells us that we need not opine on the nature of the mens-rea requirement for his SORNA offense, he seems to tacitly pursue a contrary course through a 28(j) letter. Following our decision in *United States v. Perez-Perez*, 992 F.3d 970 (10th Cir. 2021), Mr. Wilcox filed a 28(j) letter arguing that his admission of improper registration "at the time of his guilty plea is 'of questionable significance as to his knowledge of his status at the time of the offense,' because the mere fact that he 'now knows' he was not properly registered 'does not mean' that he was aware of his failure to properly register 'at the time of the offense.'" Aplt.'s 28(j) Letter at 2. Mr. Wilcox's reliance on *Perez-Perez*, however, is unavailing. First, Mr. Wilcox fails to cite any legal authority that would call for the application of the holding of *Perez-Perez* here; and second, Mr. Wilcox did not expressly advance his particular mens-rea theory—which he intimates is similar to the defendant's theory in *Perez-Perez*—in his opening brief and therefore it is waived.

More specifically, there is no legal basis for Mr. Wilcox to equate his circumstances to those in *Perez-Perez*. In *Perez-Perez*, we concluded that the defendant's guilty plea was invalid because he was not informed at the time of his plea that the government would have to prove that he "knew he was illegally or unlawfully in the United States at the time of the offense." *Perez-Perez*, 992 F.3d at 973. Mr. Wilcox essentially seeks to analogize his circumstances to those of the defendant in *Perez-Perez*: as his argument seems to go, just as Mr. Wilcox did not admit at the change of plea hearing that he knew he was not "properly registered" at the time of his offense, the defendant in *Perez-Perez* did not admit that he knew he was illegally or unlawfully in the United States at the time of his offense. However, notably, the *Perez-Perez*'s defendant's knowledge of his unlawful status in this regard was a legally relevant fact—indeed, a requisite element of his offense. In contrast, Mr. Wilcox has presented no legal authority to even suggest that his knowledge that he was not, at the time of the offense, "properly registered"—i.e., not lawfully registered—was likewise a legally relevant fact to his plea, much less a requisite element of his offense. Indeed, as he seemingly recognizes, other circuits to consider this question uniformly have reached a contrary conclusion—that "SORNA merely requires that a defendant have knowledge that he was required by law to register as a sex offender." *Vasquez*, 611 F.3d at 328. In any event, as mentioned above, Mr. Wilcox explicitly indicated that we need not opine on the nature of the mens-rea element of his SORNA offense—which would include the mens-rea theory that he tacitly endorses here. Consequently, Mr. Wilcox has waived any argument for reversal

(continued...)

17

At bottom, then, Mr. Wilcox fails to explain why it is relevant to the challenge that he *has presented* that he failed to admit when he pleaded guilty that he knew at the time of the charged offense that he was not "properly registered" in Oklahoma. More specifically, Mr. Wilcox does not tell us why—as a factual matter—the absence of such an admission rendered the district court's conclusion an abuse of discretion, that is, its conclusion that Mr. Wilcox's assertion of innocence was not credible and specifically belied by his previous statements at the change of plea hearing. In this regard, we are hard pressed to understand how the district court could be deemed to have abused its discretion for failing to view Mr. Wilcox's change of plea statements—and lack of admissions—through the prism of a legal theory that Mr. Wilcox himself acknowledges we have not previously opined on, and one he does not even urge us to adopt now. Stated otherwise, based on the factual challenge that is properly before us, we cannot conclude that the district court abused its discretion by relying on Mr. Wilcox's prior statements to determine that his later assertion of innocence was not credible. *See Marceleno*, 819 F.3d at 1274 ("If the movant's factual contentions .

[3](...continued)
based on the similarity between his mens-rea theory and the theory espoused by the defendant in *Perez-Perez*; at Mr. Wilcox's own explicit suggestion, his theory is not part of our decisional calculus. *See Wyoming v. Livingston*, 443 F.3d 1211, 1216 (10th Cir. 2006) ("Wyoming did not address this issue in its opening appellate brief. The issue is therefore waived."); *United States v. Black*, 369 F.3d 1171, 1176 (10th Cir. 2004) (holding "[f]ailure to raise an issue in the opening appellate brief waives that issue" [when the issue was raised in] "a 'supplemental memorandum brief' filed almost two months after [the] reply brief").

. . make out no legally cognizable defense to the charges, he has not effectively denied his culpability." (quoting *Hamilton*, 510 F.3d at 1214–15)).

In sum, resolving Mr. Wilcox's appellate challenge on the terms *he* has defined—i.e., with the outcome of the challenge depending on whether the district court misread the record—we conclude that the district court's rejection of Mr. Wilcox's assertion of innocence as not credible was not based on a clearly erroneous understanding of the record and did not otherwise evince an abuse of discretion. Accordingly, we uphold the district court's order denying Mr. Wilcox's motion to withdraw his guilty plea.

## IV

For the foregoing reasons, we **AFFIRM** the district court's judgment.[4]

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[4] Mr. Wilcox's recent filing, styled "Motion to Expedite Judgment," is **denied** as moot.